# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## WATERLOO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>JONATHAN PLUM,<br><br>    Defendant. | No. CR06-2040-MWB<br><br>**ORDER ON MOTION FOR INVOLUNTARY ADMINISTRATION OF PSYCHOTROPIC MEDICATION** |

_____

      This matter is before the court on the plaintiff's motion (Doc. No. 52) for an order directing the defendant Jonathan Plum to undergo additional mental health treatment, and authorizing the involuntary administration of psychotropic drugs to render Plum competent to stand trial. On November 27, 2006, the court ordered an evaluation of Plum pursuant to 18 U.S.C. § 4241(b). The evaluation was completed and a report was provided to the court on February 21, 2007. On February 28, 2007, the court held a competency hearing and found Plum was not sufficiently competent to assist in his own defense. Plum was committed to the custody of the Attorney General for hospitalization and treatment for a period not to exceed four months. *See* 18 U.S.C. § 4241(d)(1). On July 17, 2007, the court ordered the director of the facility in which Plum was being treated to file a certificate stating either (1) Plum had recovered to such an extent that he was able to assist properly in his defense, or (b) Plum's mental condition had not improved to that extent.

      The court received the evaluation report on or about July 27, 2007. In the report, the evaluators opined Plum continues to remain incompetent to assist in his defense and proceed to trial. In addition, the medical professionals treating Plum recommend that he be treated involuntarily with psychotropic medications in order to restore his competency.

      On August 7, 2007, the plaintiff filed its motion for an order directing that Plum undergo additional treatment, and also asking the court for an order pursuant to *Sell v.*

*United States*, 539 U.S. 166, 123 S. Ct. 2174, 156 L. Ed. 2d 197 (2003), for Plum's involuntary treatment with psychotropic medications in order to restore his competency to stand trial. (Doc. No. 52)

On August 28, 2007, the court held a hearing pursuant to 18 U.S.C. § 4246(a), *see* 18 U.S.C. § 4241(d), to determine whether Plum suffers from a mental disease or defect that would warrant his continued detention and treatment. In addition, the court considered the plaintiff's motion for Plum's continued treatment, and for his involuntary treatment with psychotropic medications. Assistant United States Attorney Robert L. Teig appeared at the hearing via videoconference on behalf of the plaintiff (the "Government"). Plum appeared in person with his attorney, Assistant Federal Defender Michael L. Smart. The Government offered the testimony, by telephone, of the two medical professionals who evaluated Plum and authored the report: Carlton Pyant, Ph.D. and Mark Cheltenham, M.D. The court has evaluated the evidence and turns to consideration of the Government's motion.

In *Sell*, the United States Supreme Court held that in certain limited circumstances, the Constitution allows the involuntary administration of psychotropic drugs for the purpose of rendering a defendant competent to stand trial "for serious, but nonviolent, crimes." *Sell*, 539 U.S. at 169, 123 S. Ct. at 2178. Interpreting its holdings in *Riggins v. Nevada*, 504 U.S. 127, 112 S. Ct. 1810, 118 L. Ed. 2d 479 (1992), and *Washington v. Harper*, 494 U.S. 210, 110 S. Ct. 1028, 108 L. Ed. 2d 178 (1990), the Court established a set of conditions that, when met, will allow the Government to "administer antipsychotic drugs to a mentally ill defendant facing serious criminal charges in order to render that defendant competent to stand trial[.]" *Sell*, 539 U.S. at 179, 123 S. Ct. at 2184.

The Court recognized that "an individual has a constitutionally protected liberty 'interest in avoiding involuntary administration of antipsychotic drugs' -- an interest that only an 'essential' or 'overriding' state interest might overcome." *Sell*, 539 U.S. at 178-

2

79, 123 S. Ct. at 2183 (quoting *Riggins*, 504 U.S. at 134, 135, 112 S. Ct. at 1814, 1815); *see Harper*, 494 U.S. at 221, 110 S. Ct. at 1036 (same). Further, the Court recognized that "in principle, forced medication in order to render a defendant competent to stand trial . . . [is] constitutionally permissible." *Sell*, 539 U.S. at 179, 123 S. Ct. at 2183 (summarizing the Court's holding in *Riggins*). The Court held:

> These two cases, *Harper* and *Riggins*, indicate that the Constitution permits the Government involuntarily to administer antipsychotic drugs to a mentally ill defendant facing serious criminal charges in order to render that defendant competent to stand trial, but only if the treatment is medically appropriate, is substantially unlikely to have side effects that may undermine the fairness of the trial, and, taking account of less intrusive alternatives, is necessary significantly to further important governmental trial-related interests.
>
> This standard will permit involuntary administration of drugs solely for trial competence purposes in certain instances. But those instances may be rare.

*Sell*, 539 U.S. at 179-80, 123 S. Ct. at 2184. The Court then elaborated on the factors a court must consider in making such a determination. *See id.*, 539 U.S. at 180-82, 123 S. Ct. at 2186-87.

Notably, in the present case, the doctors who evaluated Plum addressed three of the four *Sells* factors in their written report.[1] The doctors have opined, and Plum did not offer any contrary argument, that the proposed treatment is medically appropriate in light of Plum's condition; less intrusive treatments are unlikely to achieve substantially the same

---

[1] The court recognizes that pursuant to the Supreme Court's directive in *Sells*, before reaching the trial competence question, the court ordinarily should determine whether the Government seeks, or has sought, permission for forced administration of drugs on the basis of the alternative factors discussed in *Harper*; e.g., that the defendant's behavior poses a risk to himself or others. *See Sells*, 539 U.S. at 182-83, 123 S. Ct. at 2185-86. Plum's doctors have opined that within the confines of the hospital setting, Plum does not present a danger to himself or others at this time. Thus, there would be no alternative basis for the Government to seek to medicate Plum forcibly, and the court finds consideration of alternative grounds for Plum's forced medication to be unwarranted.

3

results; administration of the drugs is substantially likely to render Plum competent to stand trial; and the drugs are not likely to have side effects that would interfere significantly with Plum's ability to assist in his defense. *See Sell*, 539 U.S. at 180-81, 123 S. Ct. at 2184-85. The doctors were examined in detail about each of these factors during the hearing. Based on the doctors' testimony and their written report, the court finds all three of these factors weigh decidedly in favor of the involuntary administration of psychotropic drugs to Plum.

The primary issues the court must decide in this case are, first, whether "*important* governmental interests are at stake," *Sell*, 539 U.S. at 180, 123 S. Ct. at 2184 (emphasis by the Court), and second, if the court finds this factor weighs against forced administration of the drugs, whether that determination overrides all of the other factors and warrants denial of the Government's motion. In other words, does the Government have to prove all four of the factors to prevail on a motion for the involuntary administration of medication to render a defendant competent to stand trial?

The *Sells* Court indicated that whether a serious crime is against a person or property, the Government has an important interest in bringing the individual to trial for the purpose of protecting "the basic human need for security." *Id.* (citations omitted). However, the Court cautioned that the facts of each individual case must be considered, and the circumstances of a particular case might lessen the importance of the Government's interest in prosecution. For example, the Court noted that in some cases when a defendant refuses to take drugs voluntarily, the resulting lengthy confinement in a mental institution might "diminish the risks that ordinarily attach to freeing without punishment one who has committed a serious crime." *Sells*, 539 U.S. at 180, 123 S. Ct. at 2184. Courts are advised to weigh the consequences of having a defendant remain confined for treatment against the difficulty inherent in trying a defendant who may regain competence after years of confinement. *Id.* However, the Court held that "[t]he potential for future confinement

4

affects, but does not totally undermine, the strength of the need for prosecution." *Id*. The Court further observed, "The same is true of the possibility that the defendant has already been confined for a significant amount of time (for which he would receive credit toward any sentence ultimately imposed, see 18 U.S.C. § 3585(b))." *Id.*

In the present case, Plum is charged with possession of a firearm (i.e., a Glock 9mm handgun), after previously having been committed to a mental institution, in violation of 18 U.S.C. §§ 922(g)(4). (*See* Doc. No. 2, Indictment) The charge carries a ten-year maximum term of imprisonment. 18 U.S.C. § 924(a)(2). At the hearing, Plum's counsel speculated that Plum's Guidelines sentence range, absent any aggravating circumstances, would be in the range of eighteen to twenty-four months. Plum has been in federal custody since June 26, 2006, a term of fourteen months. He argues the fact that he already has been confined for the majority of his potential sentence mitigates against forced medication, and undermines the Government's claim that it's interest in prosecuting him is sufficiently "important" for purposes of the *Sell* analysis.

The Government argues its interest in prosecuting Plum is an important one. At the hearing, Assistant U.S. Attorney Teig noted that when an individual applies to purchase a firearm, a records check will not reveal whether or not the individual previously has been committed to a mental institution. However, the records check will reveal whether or not the individual has a prior felony conviction, resulting in denial of the individual's application to purchase a firearm. Mr. Teig therefore argues the Government's interest in protecting the public weighs in favor of bringing Plum to trial because if Plum is convicted, he will be unable to purchase a handgun (at least through legitimate sources).

The court finds the Government's argument persuasive. Given the inherent danger posed by possession of firearms by persons who have been committed for mental health treatment, the governmental interest in timely prosecution is great. Moreover, in the present case, the evidence introduced at Plum's detention hearing indicates Plum not only

5

Case 6:06-cr-02040-MWB    Document 57    Filed 08/29/07    Page 5 of 9

possessed the firearm, he discharged the weapon into the residential garage of another individual.  The governmental interest in protecting the public from this type of conduct outweighs Plum's argument regarding his length of confinement.

Further, the court finds Plum has applied the wrong standard in his argument regarding his length of confinement.  The Fourth Circuit Court of Appeals has held it is more appropriate to focus on the maximum penalty authorized by statute than on the predicted Guideline range.  *See United States v. Evans*, 404 F.3d 227, 237-38 (4th Cir. 2005).  The *Evans* court noted that focusing on the anticipated Guideline sentence would be "unworkable because at this stage in the proceedings, there is no way of accurately predicting what that range will be," and thus such a focus would shift the court's fact-finding relating to the imposition of sentence "to a time before the defendant's trial or plea, before the Probation Office prepares its [pre-sentence investigation] report, and at a time when the district court has already ruled that the defendant himself is incompetent" -- something the court held "would be uniquely inappropriate."  *Evans*, 404 F.3d at 238.

As noted above, the maximum statutory penalty for the charge against Plum is ten years.  18 U.S.C. § 924(a)(2).  Plum has been confined for about fourteen months. Although the doctors were unable and provide a definitive prediction regarding Plum's anticipated response to medication, they suggested such a prediction might be more readily available after several months of treatment with psychotropic medications.  Thus, the anticipated length of Plum's confinement does not undermine the strength of the need for prosecution in this case.  *See Sell*, 439 U.S. at 180, 123 S. Ct. at 2184.[2]

---

[2]Indeed, Plum has not been confined for such a significant time that his hospitalization for further treatment is likely to result in his continued confinement beyond a time when he otherwise would have been released from custody. Given the doctors' opinions that Plum's condition is not likely to improve, and indeed well may deteriorate, without medication, it is highly unlikely the court would order Plum's release at this time even if the charges against him were dismissed. The court previously held a detention hearing in this case and found the Government had proved by clear and convincing evidence that Plum would be a danger to the community if he were released. (*See* Doc. No. 31)  Were Plum eligible for release at this

(continued…)

The court finds important governmental interests are at stake in bringing Plum to trial. Therefore, the court finds all four of the *Sell* factors weigh in favor of the involuntary administration of psychotropic drugs to Plum for the purpose of rendering him competent to stand trial. Having so found, the court does not reach the issue of whether the Government's failure to carry the day on one of the four *Sell* factors would defeat a motion for involuntary medication to render a defendant competent to stand trial.[3]

---

[2](…continued)
time, the court would request an additional evaluation of Plum and hold a further hearing to determine whether his release would create a substantial risk of bodily harm to another, or serious damage to another's property. *See* 18 U.S.C. § 4246(a) & (b). Given Plum's current condition and prognosis, as stated by the evaluating doctors, it appears likely Plum would continue to be confined for further treatment, either in a State facility or in the federal medical center. *See* 18. U.S.C. § 4246(d).

[3]In any event, the court finds unavailing Plum's argument that the Government's failure to prove only the first factor -- the important governmental interest -- would, standing alone, defeat a motion for forced medication. Despite the fact that the *Sell* Court discussed the governmental interest factor first, the Court did not place undue emphasis on that factor. In listing the factors to be considered in the analysis of whether involuntary medication is appropriate, the *Sell* Court first listed the factors as follows:

> [Involuntary medication may be appropriate to render a defendant] competent to stand trial, but only if the treatment is medically appropriate, is substantially unlikely to have side effects that may undermine the fairness of the trial, and, taking account of less intrusive alternatives, is necessary significantly to further important governmental trial-related interests.

*Sell*, 539 U.S. at 179, 123 S. Ct. at 1284.

After discussing the four factors in detail, as well as the noting a court should inquire into whether forced medication may be appropriate on alternative grounds, the Court reiterated the four factors as follows:

> When a court must nonetheless reach the trial competence question, the factors discussed above . . . should help it make the ultimate constitutionally required judgment. Has the Government, in light of the efficacy, the side effects, the possible alternatives, and the medical appropriateness of a particular course of antipsychotic drug treatment, shown a need for that treatment sufficiently important to overcome the individual's protected interest in refusing it?

*Sell*, 539 U.S. at 183, 123 S. Ct. at 2186. In neither of these recitations of the four factors does the Court place particular emphasis on the importance of the governmental interest. Rather, if anything, the Court's
(continued…)

7

Case 6:06-cr-02040-MWB   Document 57   Filed 08/29/07   Page 7 of 9

Accordingly, the Government's motion (Doc. No. 52) for additional treatment and for administration of involuntary psychotropic medications is **granted**. Plum is committed to the custody of the Attorney General for hospitalization and treatment in a suitable facility "for an additional reasonable time until . . . his mental condition is so improved that trial may proceed[.]" 18 U.S.C. § 4142(d)(2)(A). Recognizing that the Federal Bureau of Prisons ultimately will determine the facility for Plum's placement, the court **recommends and requests** that Plum be returned to the Federal Medical Center in Butner, North Carolina, where doctors are familiar with Plum and his condition, and have developed an acceptable plan for his further treatment.

Due to the inherent challenges in developing a workable medication protocol for Plum, as outlined in the doctors' report, the court finds a "reasonable period of time," as contemplated by the statute, for the next phase of Plum's treatment to be six months from the date he returns to the hospital.[4] The director/warden of the medical facility in which Plum is hospitalized and treated is **directed** to submit a report **no later than six months from the date Plum is hospitalized** concerning Plum's mental condition, prognosis, competence to stand trial, and recommendations for his further hospitalization and treatment. Should Plum's condition improve to the point where he is competent to assist

---

[3](…continued)
emphasis appears to be more on the potential benefits versus ill effects to be gained from the proposed treatment in terms of how the treatment may affect the defendant's right to a fair trial.

[4]In its motion, the Government asked that Plum be "treated for an additional four months pursuant to 18 U.S.C. § 4241(d)(2)(A)." (Doc. No. 52) The four-month limitation applies only to a defendant's initial period of treatment under section 4241(d)(1).

8

Case 6:06-cr-02040-MWB   Document 57   Filed 08/29/07   Page 8 of 9

in his defense and proceed to trial before the expiration of the six-month period, the director/warden of the medical facility is directed to so advise the court.

**IT IS SO ORDERED.**

**DATED** this 29th day of August, 2007.

_____
PAUL A. ZOSS
CHIEF MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

9

Case 6:06-cr-02040-MWB   Document 57   Filed 08/29/07   Page 9 of 9